IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| RONNIE LEE GARDNER,<br><br>　　　　　　　　　　Petitioner,<br><br><br>　　vs.<br><br><br>HANK GALETKA, Warden of the Utah State Prison,<br><br>　　　　　　　Respondent. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br><br>Case No. 2:95-CV-846-TC |

Mr. Ronnie Lee Gardner has filed a petition for habeas corpus relief under 28 U.S.C.

§ 2254.  The court referred Mr. Gardner's petition to United States Magistrate Judge Samuel

Alba pursuant to 28 U.S.C. § 636(b)(1)(B).  On August 3, 2003, after holding lengthy evidentiary

hearings and receiving extensive briefing from the parties, the Magistrate Judge issued a

thorough Report and Recommendation ("Report") in which he recommended that Mr. Gardner's

petition be denied.

　　　　The parties filed objections to the Report, and the court heard oral argument on the

objections.  Following the hearing, the parties filed supplemental memoranda on certain issues.

　　　　The court has now reviewed the record and adopts the Report with certain modifications

as described below.[1]

---

[1] Detailed descriptions of the evidence are found in parties' pleadings and in the Report. Consequently, the court will not repeat the evidence except when necessary to explain this order.

## MR. GARDNER'S CLAIMS

### Ineffective Assistance of Trial Counsel as a Result of Conflicts of Interest (Claims A(1) through A(3), Report at 21-31.)

Mr. Gardner contends that he received ineffective assistance of counsel because his trial attorneys had conflicts of interest which adversely affected their representation of him.  The Magistrate Judge concluded that Mr. Gardner is not entitled to relief on these claims. (Report at 27, 29-30, 31.)

The court agrees with the Magistrate Judge's conclusions and adopts this section of the Report.

### Ineffective Assistance of Counsel in Investigating, Preparing for and at Trial (Claims B(1) through B(10), Report at 31-116.)

Mr. Gardner claims that his trial counsels' performance was ineffective because they failed to adequately investigate, prepare and represent him at the guilt and penalty phases of his trial.  Mr. Gardner alleged thirteen ways he contends that his attorneys were ineffective, but he has now withdrawn six of those allegations.[2]  The Magistrate Judge concluded that Mr. Gardner has failed to establish that he received ineffective assistance of counsel as regards any of the allegations.

The court agrees with the Magistrate Judge's conclusions and adopts this section of the Report with the following modifications and clarifications:

---

[2]See Report at 31-32 (listing thirteen allegations); App. A to Pet'r Objections to Mag.'s Report & Recommendation (Dkt # 607) (noting that Claims B(1), B(2), B(6), B(11), B(12), and B(13) were conceded or withdrawn by Mr. Gardner).

The Testimony of Officer Wayne Jorgenson (Claim B(3), Report at 35-50, 184-185.)

This claim centers on two statements Mr. Gardner allegedly made to Officer Wayne Jorgensen.[3]  Mr. Gardner's trial attorneys did not move to suppress these statements.

The Magistrate Judge concluded that Mr. Gardner has met the first prong of the ineffective assistance of counsel test under Strickland v. Washington, 466 U.S. 668, 687-88 (1984).  Specifically, the Magistrate Judge found that trial counsel's failure to file a motion to suppress the statements was "objectively unreasonable for Sixth Amendment purposes[.]" (Report at 38.)  But the Magistrate Judge concluded that Mr. Gardner has failed to establish prejudice as a result of the deficient performance.

The United States Supreme Court made clear that a court need not decide whether counsel's performance was deficient if a defendant cannot show prejudice.  The Court instructed:

> If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.  Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

Strickland, 468 U.S. at 697.  Accordingly, the court does not reach the issue of whether Mr. Gardner's attorneys' performance was deficient, but rather, the court goes directly to the question of whether Mr. Gardner has shown sufficient prejudice under Strickland.

After considering the record, the court is convinced that Mr. Gardner cannot show prejudice resulting from his attorneys' alleged deficient performance.  The State called Officer

---

[3]In several sections of the Report, the Magistrate Judge outlined the factual background of Officer Jorgenson's testimony.  Moreover, the parties have provided thorough accounts of the events.

Jorgenson as a rebuttal witness to disprove Mr. Gardner's testimony that he was in a daze and did not intend to shoot Michael Burdell.  But there is overwhelming evidence that Mr. Gardner did, in fact, intend to shoot Mr. Burdell.  For instance, Mr. Gardner admitted at trial that he asked his accomplice to provide him with a loaded gun to use to escape because an unloaded gun was useless.  A witness at trial testified that he saw Mr. Gardner aim the gun at Mr. Burdell's head and pause before firing.  Another witness testified that Mr. Gardner first pointed the gun at him, hesitated, then turned to Mr. Burdell and shot him.  And Mr. Gardner fired twice at Mr. Burdell, with each shot requiring him to cock the gun and then pull the trigger.

When this evidence, and the record as a whole is examined, the court concludes that Officer Jorgenson's testimony was cumulative of other evidence showing that Mr. Gardner intended to shoot Mr. Burdell.  Consequently, Officer Jorgenson's testimony did not affect the outcome of the trial.  Mr. Gardner has failed to show that the allegedly deficient performance of counsel prejudiced his defense.  See Strickland, 468 U.S. at 694 (holding that to establish prejudice, a defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

Stipulation to Admission of Prior Convictions for Impeachment (Claim B(5), Report at 51-59.)

In his Claim B(5), Mr. Gardner alleges that his trial counsel erroneously agreed that the State could introduce his prior convictions for impeachment.  The Magistrate Judge found that Mr. Gardner has abandoned this claim because he did not brief it and did not raise it at oral argument.  (Report at 59.)

The court agrees with the Magistrate Judge's conclusion, but, in any event, Mr. Gardner

has not shown ineffective assistance of counsel as regards this claim.[4]

Although in 1983 Utah had adopted many of the Federal Rules of Evidence, including Rule 609, it appears that Mr. Gardner's attorneys believed that the trial judge who presided over Mr. Gardner's trial was likely to admit all of Mr. Gardner's prior convictions regardless of the restrictions of Rule 609.  Mr. Gardner's attorneys made the decision that it would be better trial strategy to have Mr. Gardner admit to the prior felonies rather than have the State use them to impeach him.  The jury heard no details regarding the prior convictions because his counsel had obtained a court order that such details were inadmissible.

Also, Mr. Gardner's trial counsel relied on the fact of Mr. Gardner's prior convictions in their defense.  They argued that all Mr. Gardner wanted to do was escape and that he did not intend to kill anyone.  In closing, counsel pointed to Mr. Gardner's previous convictions and argued that Mr. Gardner had always before admitted his wrongdoing but that here he denied his guilt (this was Mr. Gardner's first trial) because Mr. Gardner was not guilty.

Further, the jury was bound to know that Mr. Gardner had some type of criminal record: When he shot Mr. Burdell at the state court, Mr. Gardner was in custody and had been transported from the state prison.

When reviewing an ineffective assistance of counsel claim, a court must be careful "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 468 U.S. at 689.  And strategic decisions of trial counsel are ordinarily shielded from

---

[4]See Resp. to Pet'r Objections (Dkt # 615) at 34-36 (setting forth background of counsel's decision to stipulate to Mr. Gardner's prior felonies).

charges of ineffectiveness.  See, e.g., Hatch v. Oklahoma, 58 F.3d 1447, 1459 (10th Cir. 1995)

(noting that, "in evaluating an ineffectiveness claim, this court must presume that 'the challenged

action 'might be considered sound trial strategy'" and that "defendant bears the burden of

overcoming this presumption") (quoting Strickland, 468 U.S. at 689, and Michel v. Louisiana,

350 U.S. 91, 101 (1955)).

The court is not convinced that the attorneys' conduct was ineffective, but, in any event,

Mr. Gardner has not established prejudice.  That is, Mr. Gardner has not shown that the jury's

verdict would have been different had the jury not heard the evidence of his prior convictions.

See Strickland, 468 U.S. at 694 (holding that to prevail on an ineffective assistance of counsel

claim, a defendant must show "a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different").

Mitigation Evidence (Claims B(9) and B(10),  Report at 72-116.)

Mr. Gardner claims that his counsel's investigation and preparation of evidence during

the penalty phase of his trial was ineffective.  He alleges a number of grounds in support of his

claim.  (Report at 72-73.)  The Magistrate Judge found that trial counsel had failed to adequately

prepare and present evidence regarding the possibility that Mr. Gardner had suffered organic

brain damage and the circumstances of Mr. Gardner's difficult childhood.  In addition, the

Magistrate Judge concluded that trial counsel's performance in preparing for the testimony of a

psychiatric expert, Dr. Peter Heinbecker, was deficient.  But the Magistrate Judge concluded that

Mr. Gardner has failed to establish prejudice resulting from counsel's errors.

The court agrees with the findings of the Magistrate Judge with the following

clarification.  Mr. Gardner argues that the Magistrate Judge failed to consider that under Utah

law, the State must prove beyond a reasonable doubt that the aggravating circumstances outweigh the mitigating circumstances.  Mr. Gardner also contends that the Magistrate Judge ignored the requirement of Utah law that a jury be unanimous in its decision that a death sentence should be imposed.

After a careful review of the Report, the court disagrees with Mr. Gardner.  The Magistrate Judge did consider Utah law when he reached his decision.  Moreover, the court took into consideration the requirements of Utah law when it conducted its de novo review of this section of the Report and the objections to it.  Even in light of the State's burden of establishing that the aggravating circumstances outweigh the mitigating circumstances and the requirement of unanimity, the court finds that Mr. Gardner has failed to show the necessary prejudice.

**Ineffective Assistance of Counsel on Direct Appeal (Claims C(1) through C(3), Report at 117-132.)[5]**

Mr. Gardner contends that he received ineffective assistance of appellate counsel.  His primary claim centers on his argument that one of his appellate attorneys, Ed Brass, had a conflict of interest that adversely affected his representation of Mr. Gardner.  Additionally, he complains that the Salt Lake Legal Defenders Association ("LDA") was involved in the appeal despite his dissatisfaction with LDA and despite LDA's withdrawal as counsel during the direct

---

[5]In Claim C(4) of Mr. Gardner's Petition, he actually raises six separate issues.  Five of those issues were also raised in other parts of the Petition and subsequently addressed by the Report and this Order.  (Compare Petition Claims C(4)(a), C(4)(b), C(4)(c), C(4)(d), and C(4)(e) to Report at 163-77 (post-hypnosis testimony of Robert Macri), 194-96 (right not to testify), 117-32 (ineffective assistance of counsel on direct appeal), 21-116 (ineffective assistance of trial counsel), 72-116 (mitigation evidence), and 219-22 (instruction regarding aggravation proof).)  Claim C(4)(f) (erroneous jury instruction regarding the definition of "knowingly"), however, was not referred to the Magistrate Judge, and will be addressed in a separate order.  (See also Report at 124 n.26, 130 (setting forth procedural background of Claim C(4)(f)).

appeal.  And, finally, he contends that appellate counsel failed to raise meritorious issues which

would have entitled Mr. Gardner to reversal of his conviction and sentence.

The Magistrate Judge found that Mr. Brass did not have a conflict of law, and, in any

event, there was no evidence that Mr. Brass ever compromised Mr. Gardner's interests.  As for

the claim of LDA's continued involvement, the Magistrate Judge found no substantive grounds

to conclude that this claim provides an independent basis for habeas relief.  Lastly, the Magistrate

Judge found that the issues counsel failed to raise were not meritorious and so appellate

counsel's performance was not ineffective.

The court agrees with the Magistrate Judge's conclusions and adopts this section of the

Report.

### Change of Venue (Claim D, Report at 132-151.)

Mr. Gardner contends that the trial court's denial of his motion to change venue resulted

in a constitutionally defective trial.  The Magistrate Judge found that although there was

extensive publicity surrounding the shooting and the trial, Mr. Gardner has failed to establish

either actual or presumed juror prejudice as result of the publicity.

The court agrees with the recommendation of the Magistrate Judge and adopts this

section of the Report.

### Recusal of Trial Judge (Claim E, Report at 151-157.)

Mr. Gardner argues that because the crime occurred at the court where the trial judge sat,

and the judge knew the victim and the witnesses, there was an appearance of bias on the part of

the trial judge.  Mr. Gardner also argues that certain of the judge's rulings show that the judge

was, in fact, prejudiced against him.  The Magistrate Judge concluded that Mr. Gardner has failed

to show that he was entitled to relief on this claim.

The court agrees with the Magistrate Judge's conclusion and adopts his recommendation as its order.

**Excessive Security (Claim F, Report at 157-162.)**

Mr. Gardner contends that the various security measures that were in place throughout his trial indicated to the jury that Mr. Gardner was a dangerous person.  The Magistrate Judge concluded that in light of Mr. Gardner's violent history, the use of shackles (and the other security measures), did not deprive Mr. Gardner of a fair trial and recommended that this claim be dismissed.

The court agrees with the Magistrate Judge's conclusion and adopts this section of the Report.

**Post-Hypnosis Testimony of Robert Macri (Claim G, Report at 163-177.)**

Mr. Gardner argues that because one of the witnesses to the shooting of Mr. Burdell, Robert Macri, had undergone hypnosis during the interval between the preliminary hearing and the trial, Mr. Gardner's constitutional rights to due process and his right to confront witnesses were violated.  The Magistrate Judge did not reach the question of whether constitutional violations had occurred, but instead found that Mr. Gardner suffered no prejudice as a result of the testimony.

The court agrees with the Magistrate Judge's conclusion and adopts this section of the Report.

**Prosecutorial Conduct Regarding Ed Seamons' Testimony (Claim H, Report at 177-184.)**

Mr. Gardner argues that the prosecutor caused one of the witnesses to the shooting, Ed

Seamons, to change his trial testimony.  The Magistrate Judge concluded that Mr. Gardner has

failed to establish this claim and recommended that the claim be dismissed.

The court agrees with the Magistrate Judge and adopts this section of the Report.

**Limitation of Cross-Examination (Claim J, Report at 185-190.)**[6]

Mr. Gardner argues that the trial court improperly limited his cross examination of one of

the witnesses, Officer Richard Thomas.  The Magistrate Judge concluded the trial court merely

cut off trial counsel's asking of repetitive questions.

The court agrees with the Magistrate Judge's conclusion and adopts his recommendation.[7]

**Bifurcation of Trial (Claim K, Report at 190-194.)**

Mr. Gardner contends that the jury should have first decided whether he knowingly and

intentionally killed Mr. Burdell before it heard evidence of his prior conviction for a violent

felony (which was admitted to establish one of the aggravating factors under Utah law).  The

Magistrate Judge did not reach the issue of whether the trial court should have bifurcated the

trial.  Instead, he concluded that Mr. Gardner has failed to establish prejudice.

The court agrees with the Magistrate Judge's conclusion and adopts this section of the

Report.

---

[6]Mr. Gardner's Claim I addresses the admission of Officer Jorgenson's testimony.  But Mr. Gardner did not develop the analysis of Claim I apart from Claim B(3).  And the Magistrate Judge's analysis of Claim B(3) addressed the issues raised in Claim I.  Accordingly, the court does not separately address Claim I.

[7]To the extent that Mr. Gardner raised a new argument in his objections, as discussed in the Respondent's Response to Petitioner's Objections at pp. 98-99, the court finds that he is not entitled to relief on that issue.

**Right Not To Testify (Claim L, Report at 194-196.)**

Mr. Gardner argues that the trial court violated his constitutional rights when it failed to advise him of his right not to testify.  The Magistrate concluded that Mr. Gardner has failed to establish a constitutional violation.

The court agrees with the conclusion of the Magistrate Judge and adopts this section of the Report.

**Lesser Included Instruction (Claim M, Report at 197-204.)**

Mr. Gardner contends the trial court gave an instruction that deprived him of the right to have the jury consider whether he should be convicted of lesser included offenses.  The Magistrate Judge concluded that Mr. Gardner is not entitled to relief on this claim.

The court agrees with the conclusion of the Magistrate Judge and adopts this section of the Report.

**Exclusion of Mitigating Evidence (Claim O, Report at 205-214.)**[8]

At the penalty phase of Mr. Gardner's trial, the trial court refused to admit testimony from certain of Mr. Burdell's close associates that they did not want the death penalty imposed and, in their opinion, neither would Mr. Burdell.  Mr. Gardner argues that he had a constitutional right to have the jury hear this evidence.  The Magistrate Judge concluded that Mr. Gardner is not entitled to relief on this claim.

The court agrees with the conclusion of the Magistrate Judge and adopts this section of the Report.

---

[8]Mr. Gardner has withdrawn or conceded his Claim N, so the court will not address it. (See App. A to Pet'r Objections at 2.)

11

**Instruction Concerning Mitigating Circumstances (Claim P, Report at 214-219.)**

Mr. Gardner contends that the trial court committed error at the sentencing phase when it failed to instruct the jury that it could consider the mitigating circumstance of extreme duress. (This was one of seven mitigating circumstances listed in the Utah capital punishment statute.) The Magistrate Judge concluded that Mr. Gardner is not entitled to relief on this claim.

The court agrees and adopts this section of the Report.

**Instruction Regarding Aggravation Proof (Claim Q, Report at 219-222.)**

Mr. Gardner contends that the trial court had a constitutional obligation to instruct the jury at the penalty phase that the State was required to prove beyond a reasonable doubt each aggravating circumstance upon which the jury relied when it reached its verdict of death.  The trial court refused to give the jury such an instruction.  The Magistrate Judge concluded that Mr. Gardner is not entitled to relief on this claim.

The court adopts the recommendation of the Magistrate Judge with the following modification.

Although Mr. Gardner argues now that the Magistrate Judge believed this claim was raised in connection with the guilt-phase, the court concludes that the Magistrate Judge clearly understood that Mr. Gardner's challenge pertained to the penalty phase.

Also, to the extent that Mr. Gardner is raising an argument he did not present to the Magistrate Judge, that is, his argument that Utah law requires that at the penalty phase the jury can rely only on those aggravating circumstances that it has found were proven beyond a reasonable doubt, the court denies Mr. Gardner's claim based on that argument.  Utah law imposes no such requirement. See, e.g., State v. Arguelles, 63 P.3d 731, 758 (Utah 2003)

12

("aggravating and mitigating factors 'need not have been admitted into evidence or proven beyond a reasonable doubt during the guilt phase'" to be considered during penalty phase) (quoting State v. Honie, 57 P.3d 977, 993 (Utah 2002));  State v. Lafferty, 20 P.3d 342, 376-77 (Utah 2001) (during penalty phase, "jury must determine beyond a reasonable doubt that (1) the aggravating factors in their totality outweigh the mitigating factors in their totality . . . .") (emphasis added);  State v. Carter, 888 P.2d. 629, 655-56 (Utah 1995) (rejecting proffer of instruction requiring penalty-phase jury to specially and unanimously find each aggravating factor beyond a reasonable doubt, because it did not accurately state Utah law).

**Presumption of Death (Claim T, Report at 223-228.)**[9]

According to Mr. Gardner, at the penalty phase, the jury instructions, which were based on Utah statutes, created a presumption that death was the appropriate penalty.  The Magistrate Judge found that Mr. Gardner has not established that he is entitled to relief on this claim.

The court agrees with the conclusion of the Magistrate Judge and adopts this section of the Report.

**Failure to Narrow Death-Eligible Class (Claim V, Report at 228-236.)**[10]

Mr. Gardner argues that the Utah death penalty statutes unconstitutionally fail to narrow the class of people who can be sentenced to death.  The Magistrate Judge concluded that Mr. Gardner had not established that he is entitled to relief on this claim.

The court agrees with the conclusion of the Magistrate Judge and adopts this section of

---

[9]Mr. Gardner has withdrawn or conceded Claim R and Claim S, so the court will not address them.  (See App. A to Pet'r Objections at 2.)

[10]Mr. Gardner has withdrawn or conceded Claim U, so the court will not address it.  (See id.)

the Report.

## ORDER

For the reasons set forth above and in the Magistrate Judge's Report and

Recommendation (as modified and clarified above), Mr. Gardner's Claims in his § 2254 First

Amended Petition for a Writ of Habeas Corpus (Dkt # 530) that were addressed in the Report are

hereby DISMISSED.

SO ORDERED this 5th day of April, 2007.

BY THE COURT:

TENA CAMPBELL
Chief Judge

14