IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| RONNIE LEE GARDNER,<br><br>    Petitioner,<br><br>vs.<br><br>HANK GALETKA, Warden of the Utah State Prison,<br><br>    Respondent. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br>Case No. 2:95-CV-846-TC |

Petitioner Ronnie Lee Gardner is a prisoner of the State of Utah, having been convicted and sentenced to death in 1985 for the murder of Michael Burdell. He filed a Petition for Writ of Habeas Corpus,[1] under 28 U.S.C. § 2254, in which he alleges that his Sixth Amendment right to counsel was violated during the appeal of his conviction and death sentence.[2] Specifically, he alleges in Claim C(4) of his Petition that he received ineffective assistance of appellate counsel when his attorneys failed to raise the argument on direct appeal that Jury Instruction No. 20 incorrectly defined "knowingly" (a crucial element of first degree murder).

The Respondent Hank Galetka (hereinafter the State), in its motion to dismiss, contends

---

[1] First Amended Petition for a Writ of Habeas Corpus by a Person in State Custody (Dkt # 530) (filed April 21, 2000).

[2] Mr. Gardner's claim of ineffective assistance of trial counsel is not before the court here. That claim was addressed separately in an August 13, 2003 Report & Recommendation by United States Magistrate Judge Samuel Alba and the court's subsequent order denying objections to the Report. Here, the court focuses on the discrete question of whether appellate counsel (who were different than trial counsel) were ineffective.

that Mr. Gardner's claim is procedurally barred or, alternatively, fails on the merits.

The court finds that, although it is a close question, Mr. Gardner's claim is not procedurally barred. On review of the merits, the court finds that Mr. Gardner has not affirmatively established the requisite prejudice and so his claim of ineffective assistance of appellate counsel fails. Accordingly, the State's Renewed Motion to Dismiss Claim C(4) is GRANTED.

## PROCEDURAL AND FACTUAL BACKGROUND

This case has a very involved and lengthy factual and procedural history. Only the events necessary to explain the court's decision will be listed here. For a full background, the court refers the reader to the parties' briefs and the August 13, 2003 Report & Recommendation (Docket # 590) issued by United States Magistrate Judge Samuel Alba.

**The Escape Attempt and Murder**

On April 2, 1985, Mr. Gardner (who was at the time a defendant in state custody awaiting trial for an unrelated criminal charge) was transported by officers to the state courthouse for a pre-trial hearing. Two officers escorted the shackled Mr. Gardner (he was wearing handcuffs, leg iron shackles, and a waist chain to which his handcuffs were shackled, so he could not lift his hands more than a few inches above his waist) to elevators in the courthouse basement. Based on an escape plan he had conceived with his accomplice Carma Hainsworth, Ms. Hainsworth approached Mr. Gardner and quickly handed him a loaded .22 caliber handgun. Earlier, Mr. Gardner had specified to Ms. Hainsworth that he wanted a loaded gun because an unloaded gun would have been worthless.

After Mr. Gardner obtained the gun, he aimed the gun at the officers, moved toward

them, and fired a shot. Then one of the officers shot Mr. Gardner in the chest. Mr. Gardner took cover and went into the courthouse archives room just off the elevator lobby.

Mr. Robert Macri and Mr. Michael Burdell were in the archives room when Mr. Gardner came in. Mr. Macri and Mr. Burdell hid behind one of the double doors that separated the elevator lobby and the archives room. As Mr. Gardner moved further into the room, he saw Mr. Macri and Mr. Burdell, and stopped approximately one to two feet from them. Mr. Gardner pointed the gun at Mr. Macri's head so that Mr. Macri was looking down the barrel.

Mr. Gardner was described as looking wounded, confused, glassy-eyed, and panicked. Mr. Macri saw Mr. Gardner tighten his grip on the gun as Mr. Gardner became aware that he was bleeding. Mr. Burdell said, "Oh, my God." Mr. Gardner said, "Oh, Fu–" and began to move the gun away from Mr. Macri and toward Mr. Burdell. When the gun was approximately half way between the two, Mr. Macri fled. He heard the gun fire as he ran from the room.

An archives room clerk, Edward Seamons, saw Mr. Gardner shoot Mr. Burdell. He saw Mr. Gardner aim the loaded gun at Mr. Burdell's face, saw Mr. Burdell look down "within a foot of the barrel," saw a "definite pause," saw Mr. Gardner fire the gun, and saw Mr. Burdell slump to the floor. Mr. Burdell had been shot in the head (he died en route to the hospital).

Mr. Gardner fled from the archives room, shot at a uniformed bailiff, and took two separate hostages before he was re-captured.

There was evidence that Mr. Gardner fired at Mr. Burdell twice. Clearly, he aimed at and shot Mr. Burdell in the face. Also, the medical examiner found bullet fragments in Mr. Burdell's buttocks, and a detective found a lead fragment and indentation in the counter approximately eight to twelve inches from where Mr. Burdell had fallen. During a subsequent investigation, the

police determined that Mr. Gardner's gun could not fire without first being cocked and the trigger pulled.

**The Trial, the Jury Instruction, and the Capital Murder Conviction**

Because Mr. Gardner indisputably shot and killed Mr. Burdell, the only issue regarding the murder charge was his mental state.[3]  The jury was essentially charged with determining whether Mr. Gardner was guilty of first degree murder (a capital felony) or the lesser included offense of second degree murder (requiring only a finding of depraved indifference, not intent to kill).

After all the evidence had been presented, the trial court instructed the jury on the elements of first degree murder.  The trial court noted that the jury could only find Mr. Gardner guilty of first degree murder if it concluded beyond a reasonable doubt that he committed an "intentional" or "knowing" killing.  Utah's criminal code states that a person "acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result." Utah Code Ann. § 76-2-103(2).

The jury instructions included Instruction No. 20, which reads in its entirety as follows:

> A person engages in conduct:
>
> 1. "Intentionally" when it is his conscious objective or desire to engage in the conduct or to cause the result; or
>
> 2. "Knowingly" when he is aware of the nature of his conduct, or the existing circumstances, or is aware that his conduct is reasonably certain to cause the result.

---

[3]Mr. Gardner was also convicted of attempted murder in the first degree, aggravated kidnaping, escape, and possession of a dangerous weapon by an incarcerated person, but none of these convictions is at issue in this Order.

(Addendum B to Resp't's July 2004 Mem. Supp. Renewed Mot. Dismiss Claim C(4) (Dkt # 606).)  Although Mr. Gardner's counsel submitted an alternative definition of "knowingly," his attorneys did not object to the district court's chosen instruction.  Various courts that have reviewed the jury instruction in the context of Mr. Gardner's post-conviction proceedings agree that the definition of "knowingly" was incorrect because, essentially, the phrase "is aware that his conduct is reasonably certain to cause the result" should have been joined to the previous phrase with the conjunctive "and" rather than the disjunctive "or".

Mr. Gardner does not directly challenge the "knowingly" portion of the instruction.[4]  Instead, he contends that he received ineffective assistance of counsel when his appellate counsel failed to raise the issue on direct appeal.

**Habeas Corpus Petition**

After Mr. Gardner unsuccessfully appealed his conviction to the Utah state courts (both through direct appeal and through an initial petition for post-conviction relief),[5] he filed a federal habeas corpus petition with this court in 1997.  He filed his petition pursuant to 28 U.S.C. § 2254, which provides limited remedies in federal courts to individuals in state custody. § 2254 allows a district court to "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C.

---

[4] But underlying his claim is his argument that Jury Instruction No. 20 allowed the jury to determine guilt based on a finding that Mr. Gardner was aware of the nature of his conduct but did not necessarily understand that his conduct was reasonably certain to cause the death of Mr. Burdell.

[5] In addition, the United States Supreme Court denied his petition for writ of certiorari after his direct appeals were exhausted in the Utah state court system.

§ 2254(a).

Mr. Gardner raises many different claims in his Petition. Claim C(4), which is the only claim at issue in this order, was actually added to Mr. Gardner's First Amended Petition in 1999, two years after he filed his original petition. The other claims, which were filed earlier, were referred to the Magistrate Judge for evaluation. The Magistrate Judge issued his Report & Recommendation ("Report") on August 13, 2003. The court, in a separate order, addresses the other claims in the context of the parties' objections to the Magistrate Judge's Report. But because C(4) was not referred to the Magistrate Judge, the issue is for the court's initial determination.[6]

As noted above, Mr. Gardner, through his counsel in these post-conviction proceedings, raised the issue of the "knowingly" definition much later in the proceedings. He raised it in 1999, two years after filing his federal habeas petition in January 1997, and so the issue was never raised with the Utah courts during the direct appeal process or his first petition for post-conviction relief in state court. This court allowed him to amend his Petition to include C(4), but required that he exhaust all state remedies on the issue before it would be considered by the court (the newly added claim was held in abeyance pending resolution in state court). Accordingly, Mr. Gardner filed a second petition for post-conviction relief with the state courts in Utah.

In 2004, the Utah Supreme Court found that Mr. Gardner's claim was procedurally barred

---

[6]In Claim C(4), Mr. Gardner actually raised six separate issues. Five of those issues were addressed in the Magistrate Judge's Report and the court's subsequent order addressing objections to the Report. The sixth issue, concerning Jury Instruction No. 20 (defining "knowingly") is the only issue before the court now. For convenience, in this order, when referring to Claim C(4), the court is referring only to the discrete issue regarding ineffective assistance of appellate counsel for failing to challenge the jury instruction defining "knowingly."

under Utah's 1996 Post-Conviction Remedies Act (PCRA) because it could have been, but was not, raised in the initial appeal. See Gardner v. Galetka, 94 P.3d 263, 268 (Utah 2004) ("Gardner III"). In Gardner III, the Utah Supreme Court found that the "good cause" exceptions to the PCRA (including the third and fifth good cause factors set forth in Hurst v. Cook, 777 P.2d 1029 (Utah 1989)) did not apply because Mr. Gardner's claim was not "facially plausible": "It is absurd to suggest that any reasonable juror could find that Gardner was aware that he was firing a loaded handgun into his victim's face from a short distance away, *but was not* reasonably certain that his action would cause death." Id. at 267 (emphasis in original).

One of the requirements of review under the federal habeas rule is that the question of procedural default must be determined by examining the law in effect at the time the claim was asserted in a state post-conviction petition. Because Mr. Gardner filed his initial state post-conviction petition in 1990, the 1996 PCRA did not apply. Accordingly, this court certified a question of state law to the Utah Supreme Court: "If Mr. Gardner had raised the ineffective assistance of counsel claim at issue in Gardner v. Galetka, 2004 UT 42, 94 P.3d 263, in state court in a successive petition in 1990, would the petition have been procedurally barred?"

The Utah Supreme Court responded in January 2007 in its decision in Gardner v. Galetka, 151 P.3d 968 (2007) ("Gardner IV"):

> We hold that, in 1990, Gardner's successive post-conviction claim regarding the ineffective assistance of counsel would have been procedurally barred because it could have been brought in a prior post-conviction proceeding. The "good cause" common law exceptions to the procedural bar that we established in Hurst v. Cook were unavailable to Gardner because his successive post-conviction claim is "facially implausible" and there would have been summarily dismissed without substantive review on the merits. As a result, Gardner's successive post-conviction petition would have been procedurally barred as a matter of 1990 state law.

Id. at 969. The Gardner IV court found that:

> It is clear that Gardner's successive post-conviction claim regarding the ineffective assistance of counsel could have been raised in a prior post-conviction proceeding and therefore would have been procedurally barred under the common in 1990. . . . We conclude that, in 1990, just as in 2004, we required a <u>threshold showing of non-frivolousness</u> for successive post-conviction claims before we would reach analysis under the Hurst "good cause" common law exceptions. . . .
>
> A successive post-conviction claim that is "facially implausible" or, in other words, "frivolous" does not warrant consideration under the "good cause" common law exceptions that we established in Hurst. There is no "good cause" that justifies bringing before a court a frivolous post-conviction claim. Indeed, there is no "fundamental unfairness" in dismissing a frivolous claim. Additionally, Hurst's "overlooked in good faith" factor has no reasonable application because any frivolous claim could be said to be overlooked in good faith.

Id. at 973-74 (emphasis added). In the Gardner IV opinion, the Utah Supreme Court emphasized that making the threshold determination that Mr. Gardner's claim was frivolous "was not a substantive merits review, but rather a procedural inquiry that we conducted before reaching consideration under the 'good cause' common law exceptions." Id. at 973.

> [I]n Hurst itself, we explicitly stated that "[f]rivolous claims, once-litigated claims with no showing of 'unusual circumstances' or 'good cause,' and claims that are withheld for tactical reasons should be summarily denied." This language imposes a separate and distinct procedural determination for successive post-conviction claims that is made before we reach an analysis under the "good cause" common law exceptions.

Id. at 974.

After Gardner IV was issued, the parties submitted supplemental briefs to address the procedural bar questions raised by the Gardner IV decision. The court then held a hearing on the issues raised in the State's motion to dismiss Claim C(4).

The parties agree that the procedural bar and merits issues have been fully briefed and that an evidentiary hearing is unnecessary on the issue before the court (particularly because the

Magistrate Judge conducted evidentiary hearings on the claims addressed in the Report), and so the claim is ripe for decision.

## ANALYSIS

**1.     Mr. Gardner's claim for ineffective assistance of appellate counsel concerning the "knowingly" jury instruction is not procedurally barred.**

"When a federal habeas petitioner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claim is barred absent a showing of cause and prejudice or of a fundamental miscarriage of justice."  Walker v. Attorney Gen. of Okla., 167 F.3d 1339, 1344 (10th Cir. 1999).  A state procedural rule is adequate if it was firmly established and regularly followed at the time of the purported procedural default.  Id. at 1344-45.  A state procedural rule is independent if it is based on state law rather than federal law.  Smith v. Mullin, 379 F.3d 919, 925 (10th Cir. 2004); Anderson v. Attorney Gen. of State of Kan., 342 F.3d 1140, 1143 (10th Cir. 2003).

The State contends that, given the ruling in Gardner IV, Mr. Gardner defaulted his claim when he failed to include it in the first state petition for post-conviction relief that he filed in 1990.  Mr. Gardner responds that because the Utah Supreme Court made a threshold finding that his claim was frivolous, the Utah Supreme Court necessarily decided the case on the merits, so it is not procedurally barred in federal court.

At first glance, the Gardner IV decision appears to procedurally bar Mr. Gardner's C(4) claim.  The Utah Supreme Court expressly stated that, despite its threshold finding of frivolousness, it was nevertheless applying a purely procedural rule.  But a finding that a claim is frivolous necessarily requires some review of the claim's merits.  Accordingly, the Gardner IV

decision is somewhat ambiguous on that point.

> The question whether a state court's reference to state law constitutes an adequate and independent state ground for its judgment may be rendered difficult by ambiguity in the state court's opinion.  In Michigan v. Long, 463 U.S. 1032 (1983), this Court laid down a rule to avoid the difficulties associated with such ambiguity.  Under Long, if "it fairly appears that the state court rested its decision primarily on federal law," this Court may reach the federal question on review unless the state court's opinion contains a "'plain statement' that [its] decision rests upon adequate and independent state grounds."

Harris v. Reed, 489 U.S. 255, 261 (1989).  Michigan v. Long has been characterized as establishing a conclusive presumption of jurisdiction to review the merits in cases where the state court decision "'fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion . . . .'"  Coleman v. Thompson, 501 U.S. 722, 733 (1991) (quoting Long, 463 U.S. at 1040-41).

Despite the Utah Supreme Court's statement in Gardner IV that its decision was based on procedural grounds alone, the threshold finding of a frivolous claim in Gardner IV gives this court pause.  Arguably, the threshold finding, although a part of the state's procedural bar analysis, was nevertheless "interwoven with federal law."  Given the standard in Long and Harris, the court finds that the decision in Gardner IV was not sufficient to establish a procedural bar under federal law.  Accordingly, the court will address the merits of Mr. Gardner's claim of ineffectiveness of appellate counsel.  See Neal v. Gramley, 99 F.3d 841, 843-44 (7th Cir. 1996) (citing Harris v. Reed, 489 U.S. 255, 261-63 (1996)) ("When it is unclear whether the state court's decision rests entirely on a procedural or other state law ground rather than on the merits of the federal constitutional claim, the federal court can reach those merits.").

2. **The court will apply the de novo standard of review, rather than the ADEPA standard of review.**

In 1996, Congress passed the Antiterrorism and Effective Death Penalty Act (AEDPA), which revised the standard of review in the habeas corpus petition statute, 28 U.S.C. § 2254. The relevant portion of that provision reads as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody shall not be granted with respect to any claim that was <u>adjudicated on the merits in State court proceedings</u> unless the adjudication of the claim -
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added). If the claim was decided on the merits by the state court, the strict AEDPA standard of review applies. Otherwise, the court reviews the claim de novo. Le v. Mullin, 311 F.3d 1002, 1010 (10th Cir. 2002) (per curiam).

Given the ambiguity created by the <u>Gardner IV</u> decision (that is, the threshold "frivolous" finding characterized by the Utah Supreme Court as procedural but arguably a review (however cursory) on the merits under federal law), the court will apply the de novo standard of review because even under this more lenient standard, Mr. Gardner's claim does not succeed on the merits.

3. **Mr. Gardner's ineffective assistance of counsel claim fails on the merits.**

   a. **The State's Exhaustion Argument**.

The State contends, somewhat obscurely, that Mr. Gardner never exhausted a claim on an

issue raised by the court during an October 4, 2004 hearing and subsequently briefed by the parties in supplemental pleadings. According to the State, at the hearing

> the Court raised an issue about whether the first part of the instruction [the part stating "is aware of the nature of his conduct, or the existing circumstances"] sufficiently distinguished between "knowing" capital murder and "depraved indifference" non-capital murder. The Court expressed its concern that the first part of the instruction may not have required the jury to resolve whether petitioner knew what he was doing when he shot Michael Burdell in the face and may have allowed the jury to convict petitioner merely for creating a dangerous situation in which someone got killed.

(Resp't's Supplemental Mem. in Supp. of Renewed Mot. to Dismiss Claim C(4) (Dkt # 626) at 2.) The State then contends that

> no claim challenging the first part of the instruction is properly before the Court. Petitioner has never challenged the instruction directly. Any such challenge is not part of his federal petition, and petitioner has never exhausted it in the Utah courts. Petitioner also has not established that he exhausted a claim that appellate counsel should have raised the issue the Court identified.

(Id.)

In response, Mr. Gardner characterizes the State's argument as a "narrow view of exhaustion" that is not warranted. (Pet'r's Supplemental Response Mem. Re: Mot. to Dismiss Claim C(4) (Dkt # 629) at 3.) The court agrees. Although it is true that the court has no direct challenge to the jury instruction before it, there is no question that Mr. Gardner's ineffective assistance of appellate counsel claim focuses on the entire definition of "knowingly." Inherent in Mr. Gardner's argument is the claim that the jury, given the erroneous instruction (with its disjunctive "or" rather than the conjunctive "and"), could have convicted Mr. Gardner of capital

murder without finding the necessary intent.[7] That claim was presented to the Utah state courts in Mr. Gardner's second post-conviction petition, which "alleged prejudice because the instruction 'improperly defined a critical element of murder.'" (Id.) Because Mr. Gardner fairly presented the facts and theory to the state courts, he has met the exhaustion requirement. Vasquez v. Hillery, 474 U.S. 254, 257 (1986).

### b. The Merits.

The court must assess Mr. Gardner's claim of ineffective assistance of appellate counsel under the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). Smith v. Robbins, 528 U.S. 259, 285 (2000); Cargle v. Mullin, 317 F.3d 1196, 1202 (10th Cir. 2003) (applying Strickland standard to analyze appellate ineffectiveness claim based on failure to raise issue on direct appeal).

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984).[8] To establish that his appellate counsel was so defective as to require reversal of his conviction and death sentence, Mr. Gardner must show first that counsel's performance was deficient and second that the deficient

---

[7]Mr. Gardner argues that Jury Instruction No. 20 allowed the jury to determine guilt based on a finding that Mr. Gardner was aware of the nature of his conduct but did not necessarily understand that his conduct (pointing and firing a loaded handgun at Mr. Burdell's face from a distance of one to two feet) was reasonably certain to cause the death of Mr. Burdell.

[8]During the proceedings before the Magistrate Judge, Mr. Gardner presented deposition testimony of David Bruck, a Strickland expert. The Magistrate Judge declined to consider that expert witness testimony, and the court does the same here. Because the court is not relying on the testimony of Mr. Bruck, there is no need to conduct an evidentiary hearing to obtain live testimony of Mr. Bruck. (See Pet'r's Response Mem. regarding Mot. to Dismiss Claim C(4) (Dkt # 616) at n.1 (requesting opportunity to present testimony of Mr. Bruck in person if the court considers the deposition testimony).)

performance prejudiced his defense.  Id. at 687; Neill v. Gibson, 278 F.3d 1044, 1057 (10th Cir. 2001).

> This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Strickland, 466 U.S. at 687.

Because the court's analysis under the prejudice factor is dispositive of Mr. Gardner's claim, the court need not analyze the performance of Mr. Gardner's appellate counsel.

> [A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

Id. at 697.

Mr. Gardner must affirmatively prove prejudice.  Id. at 693.  That is, he has the burden to show "that [counsel errors] actually had an adverse effect on the defense.  It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." Id.  Instead, Mr. Gardner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Neill, 278 F.3d at 1075 n.5 (requiring defendant to show "reasonable probability that the omitted claim would have resulted in a reversal on appeal").

More specifically, Mr. Gardner must establish a reasonable probability that his conviction would have been reversed on appeal if his appellate counsel had raised the erroneous jury

instruction issue. The court, in its determination, must consider the burden appellate counsel would have had to bear under Utah law in order to succeed on appeal.

The first question is whether the issue was preserved for appeal. "As a general rule, appellate courts [in Utah] will not consider an issue . . . raised for the first time on appeal unless the trial court committed plain error or the case involves exceptional circumstances." State v. Brown, 856 P.2d 358, 359 (Utah Ct. App. 1993). The issue will be preserved for appeal if an objection is "distinctly and specifically stated" to the trial court on the record in a timely manner. State v. Johnson, 774 P.2d 1141, 1144 (Utah 1989) (citing State v. Tillman, 750 P.2d 546, 551 (Utah 1987)); Brown, 856 P.2d at 360, 361-62. "Utah courts require specific objections in order 'to bring all claimed errors to the trial court's attention to give the court an opportunity to correct the errors if appropriate.'" Brown, 856 P.2d at 361 (internal citation omitted).

Here, the issue was not preserved for appeal because Mr. Gardner's trial counsel did not object to the "knowingly" instruction. Mr. Gardner contends that he preserved his objection by submitting an alternative instruction that he contends defined "knowingly." But this was not sufficient to meet the Utah courts' standards articulated above. As the State noted in one of its briefs, "Providing the Court with an alternative instruction, then standing silent about any errors in the one given, does not distinctly state the objection to the given instruction or the grounds supporting the objection." (Resp't's Mem. Supp. Renewed Mot. Dismiss Claim C(4) at 29.)

Mr. Gardner also unconvincingly argues that he preserved the issue because "the trial court indicated that no reasons for the request [for the proposed instruction] need[ed] to be made on the record." (Pet'r's Opp'n Mem. to Renewed Mot. Dismiss at 18.)

Failure to preserve an issue for appeal normally results in waiver and precludes

consideration of that issue. Brown, 856 P.2d at 363. But for death penalty cases, the Utah Supreme Court has ruled that it "will review errors raised and briefed on appeal in death penalty cases, even though no proper objection was made at trial, but will reverse a conviction based upon such errors only if they meet the manifest and prejudicial error standard." State v. Tillman, 750 P.2d 546, 553 (Utah 1987).

Because Mr. Gardner's trial counsel did not preserve the issue for appeal, he would have had to establish, on direct appeal, manifest and prejudicial error. The "manifest and prejudicial error" has been equated with the "plain error" standard. State v. Menzies, 889 P.2d 393, 403 (Utah 1994); State v. Verde, 770 P.2d 116, 120-22 (Utah 1989), overturned on other grounds, State v. Hamilton, 827 P.2d 232 (Utah 1991).

The plain error standard requires a showing that (1) an error occurred; (ii) the error was obvious; and (iii) the error was harmful. Menzies, 889 P.2d at 403. But the court may not look at Jury Instruction No. 20 in isolation. Rather, the jury instructions as a whole must be evaluated.[9] See State v. Johnson, 774 P.2d at 1146 (considering challenged jury instruction in light of the jury instructions as a whole).

It appears that an error did occur, because "knowingly" was not properly defined. But Mr. Gardner, given the instructions as a whole and the overwhelming evidence in this case, has not established harm. See also Strickland, 466 U.S. at 695 ("In making [a prejudice] determination, a court hearing an ineffectiveness claim must consider the totality of the evidence

---

[9]The State concedes that "in isolation from the record and contested issue, the instruction was wrong." But it does not concede error, because it presents an analysis based on the jury instructions as a whole.

before the judge or jury.").

The trial court instructed the jury on the lesser included offense of non-capital "depraved indifference" murder. The court defined depraved indifference as something greater than recklessness, but less than either a conscious objective to cause death or reasonable certainty that death would result. The trial court further instructed the jury to convict Mr. Gardner of the lowest degree of homicide on which they had no reasonable doubt, and to read the instructions as a whole. As a whole, the instructions told the jury that, if Mr. Gardner lacked the conscious objective to cause death or did not know that death was reasonably certain to result, they could find that Mr. Gardner acted with, at most, "depraved indifference" and could convict Mr. Gardner of, at most, non-capital murder. Taken as a whole, the trial court's instructions prohibited the jury from convicting Mr. Gardner of capital murder without finding that he was at least reasonably certain that his conduct would cause Mr. Burdell's death.

Accordingly, the court finds that even if the issue regarding the improper jury instruction had been raised on appeal, there was no reasonable probability that the outcome would have been different. No reasonable jury would find, given the totality of the evidence, that Mr. Gardner was aware of his conduct but was not reasonably certain that firing a loaded .22 caliber handgun directly into Mr. Burdell's head at point-blank range would result in Mr. Burdell's death. The state district court reviewing Mr. Gardner's claim on the merits stated it well:

> [P]etitioner must concede that the jury found either that petitioner intentionally killed Mr. Burdell, in which case that would be the end of the matter, or that they found the killing was "knowing." If the jury found that the killing was "knowing," then in order for petitioner to prevail in this case, he would have to argue that the jury found that he was aware of the nature of his conduct but, had the instruction been correctly given to them, would have found that he was not aware that his conduct was reasonably certain to cause the result. Under the facts

17

> and circumstances of this case, that would be a fantastic claim. Mr. Gardner would have to convince the jury that he was aware of his conduct in pointing and firing a large caliber handgun into the face and head of Michael Burdell, but was not aware that death was reasonably certain to follow. The Court is of the opinion that no rational juror would make such a finding.

(Mem. Decision in Gardner v. Galetka, Case No. 000903842 (District Court of the Third Judicial District in and for Salt Lake County, State of Utah) (Sep. 5, 2001) (attached as Addendum E to Resp't's Mem. Supp. Renewed Mot. Dismiss Claim C(4)).)

In short, Mr. Gardner has not established that "counsel's errors were so serious as to deprive [him] of a fair trial" and "that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." Strickland, 466 U.S. at 687.

For the reasons set forth above, Mr. Gardner has not affirmatively proved prejudice, and the court denies his petition as to Claim C(4) (that is, his claim of ineffective assistance of appellate counsel for failing to challenge the "knowingly" instruction).

## ORDER

For the foregoing reasons, Respondent's Renewed Motion to Dismiss Claim C(4) is GRANTED. Accordingly, Mr. Gardner's First Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 is DISMISSED as to Claim C(4).

DATED this 5th day of April, 2007.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
Chief Judge