IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

|  |  |
|---|---|
| RONNIE LEE GARDNER,<br><br>                    Petitioner,<br><br><br>         vs.<br><br><br>HANK GALETKA, Warden of the Utah State Prison,<br><br>                    Respondent. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br><br>Case No. 2:95-CV-846-TC |

Petitioner Ronnie Lee Gardner, currently a prisoner on death row at the Utah State Prison, seeks a certificate of appealability of the court's two orders that, in combination, denied his Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254.  He does this because, before he can appeal to the Tenth Circuit Court of Appeals, he must demonstrate to the district court that he has "made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  See also 28 U.S.C. § 2253(c)(1)(A) ("Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court[.]").

Section 2253 is essentially a codification of the "Certificate of Probable Cause" (CPC) standard announced in Barefoot v. Estelle, 463 U.S. 880 (1983), which has been used to determine whether a prisoner may appeal a denial of his habeas corpus petition.  Miller-El v.

Cockrell, 537 U.S. 322, 336 (2003).  According to that standard, Mr. Gardner, to make a "substantial showing" under the statute, must demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner <u>or that the issues presented were 'adequate to deserve encouragement to proceed further.'"</u> <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (emphasis added) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. at 893, n.4 (internal citations omitted)).  <u>Accord</u> <u>Miller-El</u>, 537 U.S. at 327 ("A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.").  The standard

> does not require a showing that the appeal will succeed. . . . The holding in <u>Slack</u> would mean very little if appellate review were denied because the prisoner did not convince a judge . . . that he or she would prevail.  It is consistent with § 2253 that a COA will issue in some instances where there is no certainty of ultimate relief.  After all, when a COA is sought, the whole premise is that the prisoner "'has already failed in that endeavor.'"

<u>Id.</u> at 337 (quoting <u>Barefoot v. Estelle</u>, 463 U.S. at 893, n.4 (internal citations omitted)).

Clearly, the nature of this habeas corpus proceeding is very serious (Mr. Gardner faces execution if his appeals fail).  <u>See also</u> <u>Williamson v. Ward</u>, 110 F.3d 1508, 1514 (10th Cir. 1997) (in assessing a claim of ineffective assistance of counsel in a capital case, "'[o]ur duty to search for constitutional error with painstaking care is never more exacting than it is in a capital case.'") (quoting <u>Burger v. Kemp</u>, 483 U.S. 776, 785 (1987)).  Given the circumstances, and having reviewed the relevant pleadings, the court finds that the issues listed below meet the standard necessary to receive a COA, in that reasonable jurists could debate the issues and that the issues presented are adequate to deserve encouragement to proceed further.

The issues to be certified are as follows:

• Claim A(1): Whether Mr. Gardner's two trial attorneys provided ineffective assistance of counsel because they had conflicts of interest, in that they were potential witnesses on Mr. Gardner's behalf on the issue of whether Mr. Gardner intended to kill Mr. Burdell.

• Claim A(3): Whether Mr. Gardner's two trial attorneys provided ineffective assistance of counsel because they had conflicts of interest, in that they failed to withdraw their representation of Mr. Gardner after being asked to do so on two occasions due to the animosity between Mr. Gardner and them.

• Claim B(3): Whether Mr. Gardner's two trial attorneys provided ineffective assistance of counsel because they failed to adequately represent him at trial, in that they failed to move to suppress, object to the admission of, or request jury instructions limiting the use of Mr. Gardner's statements to Officer Wayne Jorgensen.

• Claim B(4):  Whether Mr. Gardner's two trial attorneys provided ineffective assistance of counsel because they failed to adequately represent him at trial, in that they had Mr. Gardner testify despite his desire not to and despite inadequate advice about and preparation of his testimony.

• Claim B(5):  Whether Mr. Gardner's two trial attorneys provided ineffective assistance of counsel because they failed to adequately represent him at trial, in that they introduced testimony from Mr. Gardner describing previous convictions despite Utah Rule of Evidence 609.

3

- Claim B(7):  Whether Mr. Gardner's two trial attorneys provided ineffective assistance of counsel because they failed to adequately represent him at trial, in that they failed to object to use of prior convictions during the trial on the merits or to request a bifurcated proceeding so the information about his prior convictions would be withheld from the jury until after it decided whether he knowingly and intentionally killed Mr. Burdell.

- Claim B(8):  Whether Mr. Gardner's two trial attorneys provided ineffective assistance of counsel because they failed to adequately represent him at trial, in that they failed to locate and present expert ballistics and mental health evidence similar to that which was presented during the evidentiary hearing for Mr. Gardner's habeas corpus petition.

- Claim B(9):  Whether Mr. Gardner's two trial attorneys provided ineffective assistance of counsel because they failed to adequately represent him during the sentencing phase of trial, in that they failed to investigate, prepare and present available mitigating evidence about Mr. Gardner's social, medical, mental health, employment, incarceration, criminal, religious, and educational history.

- Claim B(10): Whether Mr. Gardner's two trial attorneys provided ineffective assistance of counsel because they failed to adequately represent him during the sentencing phase of trial, in that they failed to provide enough information and time to Dr. Peter Heinbecker to allow him to adequately evaluate Mr. Gardner and to be a solid, rather than tentative, expert mitigation witness for Mr. Gardner.

- Claims C(1), C(2), and C(3): Whether Mr. Gardner's appellate counsel provided

ineffective assistance of counsel on direct appeal because (a) attorney Ed Brass had a conflict of interest that adversely affected his representation of Mr. Gardner, and (b) Salt Lake Legal Defenders Association continued to be involved in the appeal despite its earlier withdrawal as counsel and Mr. Gardner's dissatisfaction with them.

- Claim C(4): Whether Mr. Gardner's appellate counsel provided ineffective assistance of counsel on direct appeal by failing to raise the argument that Jury Instruction No. 20 incorrectly defined "knowingly."

- Claim (D): Whether Mr. Gardner's Sixth, Eighth and Fourteenth Amendment rights to a fair trial, impartial jury, and reliable sentencing determination were violated when the trial court denied his motion to change venue.

- Claim (F): Whether Mr. Gardner's Sixth, Eighth and Fourteenth Amendment rights to a fair trial, impartial jury, and reliable sentencing determination were violated when the trial court used excessive security measures in the courtroom.

- Claim (G): Whether the State's use of post-hypnotic testimony violated Mr. Gardner's Sixth Amendment right to confrontation and Fourteenth Amendment right to due process.

- Claim (H): Whether Mr. Gardner's Eighth Amendment right to a fair and reliable sentencing determination and Fourteenth Amendment right to due process were violated when the prosecution elicited materially misleading testimony from Ed Seamons.

- Claim (I): Whether Mr. Gardner's Fifth, Sixth, Eighth, and Fourteenth

Amendment rights were violated when the trial court admitted the testimony of Officer Wayne Jorgensen and failed to give a limiting jury instruction about such testimony.

- Claim (J): Whether Mr. Gardner's Sixth, Eighth, and Fourteenth Amendment rights to confrontation, a reliable sentencing determination, and due process were violated when the trial court limited the cross-examination of prosecution witness Richard Thomas.

- Claim (K): Whether Mr. Gardner's Fourteenth Amendment right to due process was violated by the introduction of prior convictions during the guilt phase of the trial.

- Claim (M): Whether Mr. Gardner's Eighth and Fourteenth Amendment rights to a fair sentencing determination and due process were violated when the trial court gave an oral instruction to the jury that interfered with the jury's consideration of lesser-included homicide offenses.

- Claim (O): Whether Mr. Gardner's Eighth Amendment right to a fair sentencing determination was violated during the penalty phase when the trial court excluded testimony by the victim's friends that Mr. Burdell would not have wanted Mr. Gardner to receive the death penalty, and that the friends did not want Mr. Gardner to receive the death penalty.

- Claim (P): Whether Mr. Gardner's Eighth and Fourteenth Amendment rights to a fair sentencing determination and due process were violated during the penalty phase of the trial when the court failed to instruct the jury on all the mitigating

6

circumstances listed in Utah's capital punishment statute.

- Claim (T): Whether Utah's death penalty scheme at the time of Mr. Gardner's trial was unconstitutional on its face and as applied to Mr. Gardner because it created a presumption that death was the appropriate penalty.

- Claim (V): Whether Utah's death penalty scheme at the time of Mr. Gardner's trial was unconstitutional because it failed to narrow the class of persons who were eligible for the death penalty.

For the reasons set forth above, the court hereby issues this certificate of appealability for the above-listed issues.

SO ORDERED this 23rd day of May, 2007.

BY THE COURT:

TENA CAMPBELL
Chief Judge

7